UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RONALD MICHAEL BALANDRAN,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 13-313-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 26, 2013, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 28, 2013, and April 5, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 18, 2013, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 30, 1961. [Administrative Record ("AR") at 88-89.] He completed two years of college, and has past relevant work experience as a drain cleaner. [AR at 28, 68, 204, 209.]

On April 17, 2009, plaintiff filed an application for Disability Insurance Benefits, alleging that he has been unable to work since January 20, 2009. [AR at 16, 194-97.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 90-102.] An initial hearing was held on April 11, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 16, 75-87.] A vocational expert ("VE") also testified. [AR at 78-82.] A supplemental hearing was held on August 25, 2011, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 16, 36-74.] A medical expert ("ME") and VE also testified. [AR at 49-60, 69-73.] On September 8, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability from January 20, 2009, through the date of the decision. [AR at 30.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 6, 8-10.] When the Appeals Council denied plaintiff's request for review on December 5, 2012, the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

2

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had engaged in substantial gainful activity from his alleged disability onset date, January 20, 2009, through March 31, 2009, but that plaintiff had not engaged in substantial gainful activity since April 1, 2009.[1] [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of cubital tunnel syndrome, carpal tunnel syndrome, obesity, and essential hypertension. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b).[3] [AR at 21.] Specifically, the ALJ determined:

---

[1]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. [AR at 18.]

[2]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do
(continued...)

> [plaintiff] can lift and/or carry ten pounds frequently and twenty pounds occasionally; [plaintiff] can stand and/or walk six hours in an eight-hour workday with normal breaks; [plaintiff] can sit six hours in an eight-hour workday; [plaintiff] is limited to occasional pushing and pulling with his upper extremity; [plaintiff] can occasionally perform power gripping or grasping; [plaintiff] is limited to occasional fine fingering; [plaintiff] cannot climb ladders, ropes, or scaffolds; [plaintiff] cannot work at unprotected heights or around moving machines; [plaintiff] should not be exposed to extreme heat or cold; and [plaintiff] cannot work with vibration.

[Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 28.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could have performed during the relevant time period, including work as an information clerk and a counter clerk. [AR at 28-29.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 20, 2009, through the date of the decision. [AR at 30.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of his treating physician, Dr. Lawrence R. Walker, that plaintiff is limited to lifting less than 10 pounds. [Joint Stipulation ("JS") at 4-10, 15-17.] As explained below, the Court agrees with plaintiff and remands for further proceedings.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r

---

[3](...continued)
substantially all of these activities." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating . . . physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

On March 3, 2009, Dr. Walker performed an initial orthopedic consultation of plaintiff in connection with plaintiff's workers' compensation claim, which included a physical exam and a review of x-rays of plaintiff's left and right elbows. [AR at 376-82, 965-72.] Dr. Walker diagnosed plaintiff with bilateral cubital tunnel syndrome, bilateral medial epicondylitis,[4] bilateral de Quervain tenosynovitis,[5] and bilateral carpal tunnel syndrome. [AR at 382, 971.] He prescribed a treatment plan including, among other things, injections "at the first dorsal compartment," "continue[d use

---

[4] Medial epicondylitis is an overuse injury affecting the flexor-pronator muscle origin at the anterior medial epicondyle of the humerus, a bone of the upper arm or forelimb extending from the shoulder to the elbow. Dr. Sharon J. Gibbs, et. al., Physical Medicine and Rehabilitation for Epicondylitis, MEDSCAPE, http://emedicine.medscape.com/article/327860-overview (last visited Jan. 27, 2014).

[5] "De Quervain's tenosynovitis is a painful condition affecting the tendons on the thumb side of [the] wrist. . . . [A]ny activity that relies on repetitive hand or wrist movement . . . can make it worse." See De Quervain's tenosynovitis, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/con-20027238 (last visited Jan. 27, 2014).

6

of] wrist brace[,]" pain medication, and a "[f]ollowup evaluation in two weeks." [Id.] Dr. Walker opined that plaintiff, who had been on light duty following a claimed injury on January 20, 2009, "may return to modified work," but restricted plaintiff to "[l]imited use of the left and right arm, elbow, forearm, wrist and fingers." [Id.] On March 17, 2009, Dr. Walker saw plaintiff again, rendered the same diagnoses, and additionally ordered "EMG/nerve conduction velocities of the upper extremities," and a followup evaluation in four weeks. [AR at 373-74, 961-62.]

In a March 25, 2009, "Progress Report," Dr. Walker noted that plaintiff "had steroid injections to his wrists," was "started on nonsteroidal anti-inflammatory analgesics and medications and placed in a wrist brace." [AR at 364, 951.] He opined that plaintiff "may return to modified work," with the following restrictions: "No pushing, pulling or lifting over 10 pounds[,]" "[n]o using computers over two hours without taking a break[,]" and "[m]ust wear wrist braces." [AR at 368, 955.]

In an April 21, 2009, "Progress Report," Dr. Walker indicated that plaintiff "had steroid injections to the wrists, but it did not make the pain go away. He has also been on nonsteroidal anti-inflammatory medications and analgesics and he wears a wrist brace. He continues to have problems." [AR at 358, 944.] Dr. Walker also noted that: "We sent him back to modified work, but he informs me that they sent him home because they did not have modified work for him to do." [Id.] Dr. Walker assigned plaintiff a disability status of "temporary total disability" for six weeks. [AR at 362, 948.]

On June 12, 2009, and in subsequent visits occurring approximately monthly through January 2010, and every 6-8 weeks through May 2010, Dr. Walker rendered the same diagnoses, recommended and performed "bilateral de Quervain tenosynovectomy and bilateral carpal tunnel releases,"[6] with physical therapy following each procedure, and repeatedly opined that plaintiff

---

[6] A De Quervain tenosynovectomy is an outpatient surgical procedure in which the "doctor inspects the sheath surrounding the involved tendon or tendons, and then opens the sheath to release the pressure and restore free tendon gliding." See De Quervain's tenosynovitis, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/treatment/ con-20027238 (last visited Jan. 27, 2014).

7

would be temporarily totally disabled for varying periods of time. [AR at 329, 334-35, 340-41, 349-50, 356, 919-25, 930-31, 940, 984-85, 992-93, 999, 1006.]

On August 18, 2009, a nonexamining State agency physician completed a Physical Residual Functional Capacity Assessment of plaintiff and opined that plaintiff retained the RFC to perform a full range of light work. [AR at 301-02.] On December 30, 2009, a second nonexamining physician similarly opined that plaintiff's status "remains light RFC." [AR at 387-88.]

In a March 2, 2010, treatment note, Dr. Walker indicated that plaintiff "continues to have pain and discomfort in the elbow and forearm areas," and that "in spite of [physical therapy, plaintiff] continues to have problems." [AR at 474, 1049.] Dr. Walker opined that plaintiff would be temporarily totally disabled through early May. [AR at 479, 1054.] On May 7, 2010, when plaintiff "ha[d] not noticed a lot of improvement since surgery," Dr. Walker again assessed plaintiff as temporarily totally disabled, and reported that he expected to "make [plaintiff] permanent and stationary on his next visit and expect[ed] to make him a Qualified Injured Worker."[7] [AR at 468, 471, 1043, 1046.]

On September 8, 2010, plaintiff underwent an Agreed Medical Examination with Dr. William H. Mouradian, in connection with his workers' compensation claim. [AR at 1249-76.] Based on his review of plaintiff's medical records, x-rays, and his examination of plaintiff, Dr. Mouradian diagnosed plaintiff with "[c]ubital tunnel syndrome, bilateral," and "[c]arpal tunnel syndrome, bilateral." [AR at 1249, 1268.] Dr. Mouradian opined that plaintiff "is precluded from repetitive motions, maintenance of fixed positions, and very heavy work," as well as from "repetitive motions, fixed positions, impact and vibratory tools, and forceful gripping and grasping as well as prolonged or repetitive precision activities such as keyboarding." [AR at 1268-69.] Dr. Mouradian explained that his use of "repetitive" meant "more than occasionally and less than constantly, e.g.,

---

[7] Under California's workers' compensation system, an employer is required to provide vocational rehabilitation "[w]hen an employee is determined to be medically eligible, i.e., a Qualified Injured Worker." Gamble v. Workers' Comp. Appeals Bd., 143 Cal.App.4th 71, 81, 49 Cal.Rptr.3d 36 (2006) (internal quotation marks and citations omitted). "Medical eligibility contemplates the injured worker will be permanently precluded from returning to his or her usual occupation or position held at the time of the injury." Id. (internal quotation marks and citation omitted).

intermittently," and that "a work restriction precluding very heavy lifting implies only a 25% loss of lifting capacity." [AR at 1268.] Subsequently, on March 21, 2011, Dr. Mouradian issued a supplemental report based on his review of additional medical records from Loma Linda University and concluded that his "opinions expressed previously . . . are unchanged." [AR at 1278-85.]

At the supplemental administrative hearing on August 25, 2011, the ME testified that plaintiff "could function at a full range of medium level of work activities," with limitations of no exposure to extreme cold and no use of vibratory tools. [AR at 54-55.] The ME also opined that plaintiff equaled Listing 11.14[8] for the closed period beginning with his alleged onset date of January 20, 2009, "until three months after the surgical procedure which was performed" on December 11, 2009. [AR at 54.]

In his decision, the ALJ assigned "great weight" and "significant weight" to the opinions of the nonexamining physicians, and "significant weight" to the opinion of the examining physician, Dr. Mouradian. [AR at 26.] The ALJ also gave "significant, but not great" weight to the ME's opinion, but rejected his opinion to the extent that he opined plaintiff equaled Listing 11.14, based on the ALJ's finding that plaintiff performed substantial gainful activity between January 2009 and April 2009. [AR at 25-27.] The ALJ gave little weight to Dr. Walker's opinion on the grounds that: (1) it was "not consistent with the objective medical evidence"; and (2) "it appears [Dr. Walker] relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." [Id.] The ALJ further rejected Dr. Walker's opinion because workers' compensation uses different terminology and "[t]he physicians used by either party in workers' compensation cases are often biased and do not provide truly objective opinions." [AR at 27.]

Under the circumstances, none of the reasons provided by the ALJ for assigning "little weight" to Dr. Walker's opinion is legally sufficient and/or supported by substantial evidence. [AR at 27.] As an initial matter, even assuming the opinions of the examining physician, the nonexamining physicians, and the ME constituted "substantial evidence," the Social Security

---

[8] See 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14 ("Peripheral neuropathies").

9

regulations still require deference to the treating physician's opinions. See 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-2p,[9] 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."); Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007) ("Even if [the examining physician's] opinion were 'substantial evidence,' § 404.1527 still requires deference to the treating physicians' opinions."). Under 20 C.F.R. §§ 404.1527 and 416.927, the Commissioner looks at the following factors in determining the weight it will give the treating physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination[]" by the treating physician; and (2) the "[n]ature and extent of the treating relationship[]" between the patient and the treating physician. Id. at §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(3)-(6)) (brackets in original).

Under the factors set forth in § 404.1527, it is clear that Dr. Walker's opinion should be afforded greater weight than the opinions of the non-treating physicians. For example, Dr. Walker's treating relationship provides a "unique perspective" on plaintiff's condition. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn, 495 F.3d at 633. Dr. Walker treated plaintiff from his initial evaluation on March 3, 2009, through at least May 7, 2010. [See AR at 376, 471, 965, 1043.] In addition, the nature and extent of Dr. Walker's relationship with plaintiff adds significant

---

[9] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

weight to his opinion. See 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii); Orn, 495 F.3d at 633. Dr. Walker himself performed a left De Quervain's tenosynovectomy and left carpal tunnel release on plaintiff on July 18, 2009, and a right De Quervain's tenosynovectomy and right carpal tunnel release on December 11, 2009. [AR at 341-42, 919-20, 1071-72.] Dr. Walker treated plaintiff on an approximately monthly basis from March 2009 through January 2010, and then approximately every six to eight weeks through May 2010, and his treatment records cover that entire period. [See AR at 324-82, 468-72, 474-80, 482-86, 488-92, 497-98, 919-32, 936-41, 944-49, 951-56, 958-63, 965-72, 980-86, 989-93, 995-1000, 1043-47, 1049-55, 1057-61, 1063-67, 1071-72.]

The "[s]upportability" of plaintiff's treating physician's opinion adds further weight. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Viewed in its entirety, the record provides ample support for Dr. Walker's opinion. For example, Dr. Walker's treatment notes consistently document his diagnoses of carpal tunnel and De Quervain's tenosynovitis and related functional limitations. [See, e.g., AR at 373-74, 961-62 (March 17, 2009, Progress Report indicating "positive Tinel sign over the ulnar nerve at the cubital tunnel" of the right and left elbows, "positive Tinel sign over the median nerve," "positive Phalen sign[s]" and positive Finkelstein sign[s]" at the right and left wrists, "tenderness over the first dorsal compartment of the [right] wrist," and "some weakness of the first dorsal interosseous of the [left] hand," and restricting plaintiff to "[l]imited use of the left and right arm, elbow, forearm, wrist and fingers."); 367-68, 954-55 (March 25, 2009, Progress Report, noting the same objective medical observations, and restricting plaintiff to "[n]o pushing, pulling or lifting over 10 pounds," "[n]o using computers over two hours without taking a break," and requiring that plaintiff "wear wrist braces."); 361-62, 947-48 (April 21, 2009, Progress Report, noting the same objective medical observations, and continuing treatment plan with regard to wrist brace and pain medication); 355-56, 939-40 (June 12, 2009, Progress Report, noting the same objective medical observations, continuing treatment plan with regard to wrist brace and pain medication, and recommending "bilateral de Quervain tenosynovectomy and bilateral carpal tunnel releases"); 348-49, 929-30 (July 17, 2009, Progress Report, noting the same objective medical observations, continuing treatment plan with regard to pain medication, and scheduling surgery

for left hand and wrist); 339-40, 998-99 (October 6, 2009, Progress Report, indicating "positive Tinel sign over the ulnar nerve at the cubital tunnel" of the right and left elbows, "positive Tinel sign over the median nerve," "positive Phalen sign[s]," positive Finkelstein sign[s]" and "some slight weakness of the first dorsal interosseous of the [right] hand," and recommending "right carpal tunnel release and a de Quervain tenosynovectomy, right wrist."); 334, 992 (November 17, 2009, Progress Note, noting the same objective medical observations as the October 6, 2009, note, and repeating the recommendation for surgery on the right hand and wrist); 328-29, 984-85 (December 8, 2009, Progress Note, repeating the objective findings of the October 6, 2009, and November 17, 2009, notes, and scheduling surgery for right hand and wrist).]

In addition, the consistency of Dr. Walker's opinion warrants additional weight. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); Orn, 495 F.3d at 634. Dr. Walker's opinion is "consistent 'with the record as a whole.'" See Orn, 495 F.3d at 634 (quoting 20 C.F.R. § 404.1527(c)(4)). Plaintiff's medical records repeatedly document his treatment for symptoms consistent with Dr. Walker's opinion. [See, e.g., AR at 899-900 (February 5, 2009, Progress Note, by plaintiff's treating physician, Dr. Tony Hunt,[10] assessing plaintiff for "cubital tunnel syndrome, bilateral elbows," and assigning functional assessment limitation of no lifting over 10 pounds and "no pushing/pulling over 10 pounds of force and limited use of both hands"); 896-97 (February 12, 2009, Progress Note, by Dr. Hunt, repeating previous functional assessment); 894-95 (February 19, 2009, Progress Note, by Dr. Hunt, repeating previous functional assessment); 892-93 (February 24, 2009, Progress Note, by Dr. Hunt, repeating previous functional assessment). Finally, Dr. Walker's specialization in the area of orthopaedic surgery adds further weight to his opinion which concerns "medical issues related to his . . . area of specialty." See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

---

[10] The ALJ erroneously attributed Dr. Hunt's treatment notes to "Gary Scofield," a "physician assistant" in Dr. Hunt's medical group. [See AR at 27.] As a result, the ALJ determined these findings were from a non-acceptable medical source and gave them no weight. [See id.] It is clear from the record, however, that the particular treatment notes at issue were completed by Dr. Hunt, an acceptable medical source and a treating physician. [See AR at 892-900]; 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e). Accordingly, the ALJ erred by rejecting Dr. Hunt's findings without providing legally adequate reasons.

12

Moreover, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Walker's opinion. First, the ALJ's statement that Dr. Walker's opinion is "not consistent with the objective medical evidence" is too broad and vague to achieve the level of specificity required under the law. [See AR at 27]; Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted).

The ALJ's finding that Dr. Walker's opinion is inconsistent with the evidence also misstates the record. A review of the record as a whole reveals that Dr. Walker's opinion is actually consistent with, and supported by, the medical evidence. See Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted). For example, plaintiff's condition was serious enough to warrant that he undergo surgeries on both right and left upper extremities. [See AR at 341, 497, 919, 1071.] Additionally, although plaintiff's treatment with Dr. Walker appears to have discontinued after May 7, 2010, the record indicates that plaintiff's surgeries performed by Dr. Walker failed to permanently alleviate his symptoms. [AR at 468, 1043 ("[plaintiff] has not noticed a lot of improvement since surgery").] Dr. Mouradian, in a subsequent examination, similarly opined that plaintiff suffered from continued limitations in his elbows and wrists despite the surgeries. [See AR at 525.] Furthermore, additional post-surgery medical records from plaintiff's treatment at Kaiser Permanente consistently indicate that plaintiff continued to suffer symptoms related to his wrist and elbow impairments. [See, e.g., AR at 24, 1081 (October 25, 2010, treatment note that plaintiff wears

"right wrist brace"); 1169, 1174 (December 28, 2010, treatment records noting history of carpal tunnel and complaints of "cramps and spasms in muscles of forearms"); 1228-30 (January 5, 2011, treatment note indicating that plaintiff complains of feeling like his "arms get stuck"); 1130-33 (January 12, 2011, treatment note that plaintiff is not working because of carpal tunnel, noting "numbness" in hands and elbows).]

The ALJ also rejected Dr. Walker's opinion on the ground that he "relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." [AR at 27.] The ALJ, however, failed to cite any support in the record for his assertion that Dr. Walker's opinion is based solely on plaintiff's subjective allegations. [See id.] As a result, the ALJ's finding is purely speculative and not supported by substantial evidence. See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) ("speculation on the part of the ALJ do[es] not amount to substantial evidence -- much less [a] clear and convincing reason[]"). In any event, it is clear from the record that Dr. Walker did not simply "accept as true" all of plaintiff's reported symptoms and limitations. For example, despite plaintiff's complaints of symptoms in his shoulder and back, Dr. Walker did not mention such limitations in his opinion and only noted limitations resulting from impairments in plaintiff's arms, elbows, forearms, wrists and fingers. [See AR at 374, 377.] Additionally, Dr. Walker's reports indicate that he considered many forms of evidence, including physical examinations, objective tests, surgery and extensive follow-up, medical history and records, as well as plaintiff's report of symptoms. [See, e.g., AR at 376-82, 965-72 (initial physical exam, review of x-rays); 370-75, 958-63 (ordering EMG/nerve conduction velocities); 358, 944 (noting "steroid injections to the wrists" that did not eliminate pain); 352-56, 936-40 (discussing "normal" results of EMG/nerve conduction velocities, but reconfirming opinion that plaintiff has "compressive neuropathy" at the elbows, hands and wrists, and repeating diagnoses); 329, 334-35, 340-41, 349-50, 919-25, 930-31, 985, 992-93, 999, 1006 (performing "bilateral de Quervain tenosynovectomy and bilateral carpal tunnel releases," with physical therapy following each procedure, and monitoring recovery).]

The ALJ further erred by rejecting Dr. Walker's opinion on the basis that the term "temporarily totally disabled" is a term used in workers' compensation law, and "the criteria used

to determine disability under the Social Security Act [are] different from worker's compensation laws (citation omitted)." [See AR at 27.] Although Dr. Walker repeatedly opined in his treatment records that plaintiff was temporarily totally disabled, his use of this term does not negate the other evidence included in his treatment records regarding plaintiff's functional limitations. [See AR at 324-82, 468-72, 474-80, 482-86, 488-92, 497-98, 919-32, 936-41, 944-49, 951-56, 958-64, 965-72, 980-86, 989-93, 995-1000, 1043-47, 1049-55, 1057-61, 1063-67, 1071-72.]; Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) ("ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings"); Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984) ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim").

Finally, the ALJ's claim that "[t]he physicians used by either party in workers' compensation cases are often biased and do not provide truly objective opinions," is not supported by substantial evidence. [See AR at 27.] The ALJ pointed to no evidence in the record to support a finding of impropriety on the part of Dr. Walker. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1464-655 (9th Cir. 1996) ("consideration of the fact that a doctor's report was solicited by claimant's counsel was 'a permissible credibility determination' [where the report of the doctor] consisted of no more than a wholly conclusory opinion unsupported by any objective medical findings, personal observations or test reports, and was directly contradicted by the conclusions of a number of other treating physicians whose opinions were based on objective medical findings.") (emphases and internal citations omitted); Reddick, 157 F.3d at 725-26 (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Walker's opinion. As a result, the ALJ's decision denying benefits is not supported by substantial evidence and remand is warranted.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister, 888 F.2d at 603. Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health and Human Servs. (Varney II), 859 F.2d 1396, 1401 (9th Cir. 1988); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Here, there are outstanding issues that must be resolved before a final determination can be made. However, in an effort to terminate these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Walker, the ALJ on remand shall credit Dr. Walker's opinion as a matter of law. See Widmark, 454 F.3d at 1069 ("Because the ALJ failed to provide adequate reasons for rejecting [the examining physician]'s opinion, we credit it as a matter of law."); Edlund, 253 F.3d at 1160 (crediting, as a matter of law, improperly rejected treating physician opinions).

Next, the ALJ shall reassess plaintiff's RFC and determine, at step five, whether plaintiff is capable of performing other work.[11] Plaintiff contends that, once Dr. Walker's opinion is properly

---

[11] Nothing in this order is intended to disturb the ALJ's step four finding that plaintiff could
(continued...)

16

credited, plaintiff will satisfy Grid Rule 201.14,[12] which requires, among other things, that plaintiff's previous work experience in skilled or semiskilled positions involved skills that are "not transferrable." [JS at 5.] 20 C.F.R., pt. 404, subpt. P, appx. 2, § 201.14. However, as the ALJ made no finding with regard to the transferability of plaintiff's job skills, it is not clear that plaintiff satisfies the requirements of this rule. See SSR 82-41, 1982 WL 31389 at *7 (S.S.A. 1982) ("When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation."). On remand, the ALJ shall determine whether plaintiff is disabled under the grids. See Gruhlke v. Astrue, 2013 WL 6491059 (W.D. Wash. Dec. 10, 2013) (remanding where "issues still remain with respect to the transferability of plaintiff's skills"); Menefee-Arellano v. Astrue, 2011 WL 1337347 (D. Or. Apr. 7, 2011) ("It is the role of the ALJ, not this court, to make [findings as to the transferability of plaintiff's skills].") (citation omitted). Finally, if the ALJ determines that the grids do not direct a finding of disability, the ALJ shall, with the assistance of a VE, continue with the step five analysis and determine whether plaintiff is capable of performing other work existing in significant numbers in the national economy.

/
/
/
/

---

[11](...continued) not perform his past relevant work. [See AR at 28.]

[12] "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables [--] one for each category: '[m]aximum sustained work capacity limited to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and '[m]aximum sustained work capacity limited to medium work.' Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.1999) (citations and footnote omitted).

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 28, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE